In the Matter of EDGE HO HOLDING CORPORATION et al., Respondents.

JAMES A. HIGGINS, as Commissioner of Accounts of the City of New York, Appellant.

(Argued May 11, 1931; decided June 2, 1931.)

*Arthur J. W. Hilly,* Corporation Counsel (*Leonard M. Wallstein, William E. C. Mayer, J. Joseph Lilly* and *Ralph M. Frink* of counsel), for appellant. The Commissioner of Accounts had power to issue the subpœna because the proceeding in which it was issued was an examination of the methods of city departments and the facts which were sought to be ascertained by means of the subpœna were material and relevant to such methods. (*Matter of Hirshfield* v. *Hanley,* 228 N. Y. 346; *Matter of Hertle,* 120 App. Div. 717; 190 N. Y. 531; *Matter of Foster,* 139 App. Div. 769; *Matter of Hirshfield* v. *Craig,* 209 App. Div. 555; 239 N. Y. 98; *Matter of Hirshfield* v. *Cook,* 188 App. Div. 843; 227 N. Y. 297; *Matter of Johnson,* 144 N. Y. 563; *Parmenter* v. *Fitzpatrick,* 135 N. Y. 190; *Matter of Jennings Street,* 207 App. Div. 170; *Rathbone* v. *Ayer,* 121 App. Div. 355; *Rorke* v. *Kings Co. El. Co.,* 22 App. Div. 511; *Matter of Public Park,* 171 App. Div. 834; *Matter of Dept. Public Works,* 53 Hun, 280; *Matter of Block, Ave. A,* 66 Misc. Rep. 488; *Matter of Valley Stream,* 152 App. Div. 422; *Matter of Hamilton Place,* 67 Misc. Rep. 191; *Matter of Simmons,* 132 App. Div. 574; *Porter* v. *International Bridge Co.,* 137 N. Y. Supp. 214; *Muskian* v. *Reilly,* 124 Misc. Rep. 571.) The fact that the Commissioner of Accounts was making such examination at such a time that evidence or information, which he was obtaining, might be useful in a pending litigation, does not oust him of jurisdiction or authorize the vacating of the subpœna. (*Sinclair* v. *United States,* 279 U. S. 265; *People ex rel. McDonald* v. *Keeler,* 99 N. Y. 463; *Matter of Shrig,* 181 App. Div. 865; 223 N. Y. 670; *Matter of Bunner,* 223 App. Div. 832; *Matter of Egan,* 205 N. Y. 147; *Matter of Hirshfield* v. *Craig,* 239 N. Y. 98; *Spalding* v. *Vilas,* 161 U. S. 483; *Matter of Fuller,* 21 Hun, 497; *Brown* v. *Smith,* 24 Barb. 419; *Conley* v. *Carney,* 126 App. Div. 337; *Beardsley* v. *Kilmer,* 238 N. Y. 80.)

*Charles S. Noyes* and *William S. Pettit* for respondents. The Commissioner of Accounts has no power under the

statute creating his office to conduct the examination sought. (*Matter of Hirshfield* v. *Craig*, 239 N. Y. 98; *Matter of Steiger* v. *Collins*, 213 App. Div. 76; 241 N. Y. 526; *Matter of Hirshfield* v. *Smith*, 215 App. Div. 81; *Matter of Hertle*, 120 App. Div. 717; 190 N. Y. 531; *Matter of Foster*, 139 App. Div. 769; *Matter of Wallstein*, 178 App. Div. 140; *Matter of Hirshfield* v. *Hanley*, 228 N. Y. 346.) The fact that the Commissioner of Accounts was authorized to examine the methods of the departments specified, did not justify the issuance of the subpœna. (*People* v. *Keeler*, 99 N. Y. 463; *Matter of Hirshfield* v. *Craig*, 239 N. Y. 98.)

CARDOZO, Ch. J. The Commissioner of Accounts of the city of New York is empowered by the city charter to " make such special examinations of the accounts and methods of the departments and offices of the city and of the counties of New York, Richmond, Queens, Kings and Bronx, as the mayor may from time to time direct, and such other examinations as the said commissioner may deem for the best interests of the city, and report to the mayor and the board of aldermen the results thereof. For the purpose of ascertaining facts in connection with these examinations he shall have full power to compel the attendance of witnesses, to administer oaths and to examine such persons as he may deem necessary " (Charter of City of New York, § 119; L. 1901, ch. 466, amd. L. 1916, ch. 517, § 1).

In October, 1930, a special assistant corporation counsel was appointed to conduct an investigation into the system of condemnation of real property for city purposes. At the same time the Mayor gave instructions to the Commissioner of Accounts to co-operate with the special assistant so appointed, Mr. Leonard M. Wallstein, and to preside at any hearings appropriate to that end.

The Commissioner, in discharge of the duty thus laid upon him by the Mayor, issued a subpœna directed to the

Edge Ho Holding Corporation, its president and its secretary, requiring them to appear for examination and to bring with them " all contracts, memoranda, records and other documents " relating to a sale of real property made by the corporation subpœnaed to another corporation in August, 1925. Upon the service of the subpœna, the witnesses applied to the Supreme Court for an order to vacate the process. The moving affidavit, made by their attorney, stated upon information and belief that the documents subpœnaed were not desired in good faith for the purpose of inquiry into the methods of any department of the city government and were not pertinent thereto. They were sought, it was said, in aid of objections then pending undetermined to an award in the Rockaway Public Beach condemnation proceeding, which had gone forward to the stage of a tentative decree (Charter of City of New York, § 1001). The attorney for the witnesses is also the attorney for the claimant, the owner of the award. The special assistant, Mr. Wallstein, representing the city in the general inquiry as to the methods of condemnation, represents it also in its opposition to the tentative decree. The land described in the subpœnaed documents is part of the land condemned, and the sale is one of the links in the claimant's chain of title. In response to the application to set aside the subpœna the Commissioner of Accounts submitted an answer asserting the good faith of the inquiry and the importance of the information for the attainment of the end in view. The application to vacate was denied by the Supreme Court at Special Term. It was granted by the Appellate Division in a reversal upon the law and the facts. The order being final (*Matter of Depue*, 185 N. Y. 60, 66), the case is here.

We think an inquiry as to the price paid to former owners for land condemned within a period of time not unreasonably remote is fairly related to an inquiry into the efficiency of the methods by which condemnation

proceedings are conducted in the offices of the city government responsible therefor. In such proceedings as in lawsuits generally the courts must rest their determination on the evidence exhibited by counsel. They are helpless, except in rare instances, to speak the word of truth if the facts are not uncovered for them. It results that the efficiency of any system of awards for land condemned depends in no small measure upon the diligence and skill with which the case has been prepared. The inquisitor in the pending investigation has in mind to show that awards have been swollen in excess of the market values, and that this has been done without scrutiny of the cost and without attempt to prove it by witnesses easily available. We cannot say with fairness that such evidence is unrelated to an inquiry into the efficiency of official methods. It is directed to one of the things that an inquisitor, charged with a duty to investigate the existing system of condemnation, would not unnaturally wish to know. He would wish to know whether material information had been withheld or accessible witnesses ignored, whether preparation for trial had been painstaking and thorough or indifferent and lax. If indifference or laxity appeared to be serious or general, the conclusion might be drawn that there was something wrong in the methods of the office where these deficiencies prevailed. The deficiencies might point to the need of administrative reforms, or, if these should seem to be inadequate, to amendments of the statute.

The argument is made that the Commissioner is not at liberty to pursue an inquiry into the efficiency of governmental methods unless those methods have a direct relation to the system of accounts in the office or department subject to his scrutiny. We do not read so narrowly the statutory grant of power. The statute says that he may investigate the accounts and methods of the departments and offices of the city and of the counties embraced within it. This does not mean that

*both* accounts and methods must be involved in every instance. Investigation aimed at either will wake into action the Commissioner's authority. Nothing to the contrary was determined in *Matter of Hirshfield* v. *Craig* (239 N. Y. 98). The inquiry there excluded (p. 114) was aimed at a mere proposal for a contract unrelated to a settled practice, to any method of the office. Indeed it is hard to think of a situation in which incompetence or laxity so general as to amount to proof of method will not also have direct relation to the accounts of the department or office subject to the criticism, since the wages of the assistants are wastefully expended if reasonably efficient service is not rendered in return. We are not unmindful of the fact that this particular subpœna is directed to a single contract, and not to contracts generally. The Commissioner cannot reasonably be expected to prove everything at once. Only in its immediacy is his inquiry directed to a particular transaction as distinguished from a course of dealing. In its ultimate significance it seeks to uncover something typical of a practice or a method. We have held that investigation is not limited to a consideration of the methods actually in vogue. It may go beyond these into a consideration of what the methods ought to be (*Matter of Hertle*, 120 App. Div. 717; 190 N. Y. 531; *Matter of Hirshfield* v. *Craig, supra*, p. 112). The inquiry now proposed is an attempt to probe into the past in the belief that discovery of its evils may bring correction in the future.

The argument is made that the witnesses are not employees of the city nor even claimants for an award, but merely former owners, and that they are exempt from a duty to make disclosure of their own affairs. We have held that the Commissioner's power to inquire is not limited to witnesses in the service of the city, and that there is no privilege of silence when reticence, if tolerated, would thwart the public good (*Matter of Hirshfield* v. *Hanley*, 228 N. Y. 346). Argument is made

also that the subject matter of the contract described in the subpœna is the same as the subject matter of a proceeding for condemnation now pending in a court, and that inquiry by a court, though directed to a different end, displaces and supersedes inquiry by an administrative officer as to administrative methods. The law is settled to the contrary (*Sinclair* v. *United States*, 279 U. S. 263, 265, 289, 295; *People ex rel. McDonald* v. *Keeler*, 99 N. Y. 463, 468).

A final argument is built upon an analysis of motives. Nothing in the record gives fair support for the conclusion that the professed object of the inquiry into administrative methods is merely a cover and a sham. This being so, there is no occasion to consider whether the motives of the Commissioner are subject to judicial review when the subject of the inquiry is within his jurisdiction (as to this, see *Matter of Hirshfield* v. *Craig*, *supra*, p. 110). If the Appellate Division in reversing upon the facts can be supposed to have impugned the good faith of the inquiry, our estimate of the facts is different. The case is before us on the merits, with full power of review on the facts and on the law (*Matter of Flagler*, 248 N. Y. 415, 420; Civ. Prac. Act, § 589, subd. 2).

The powers devolved by the charter upon the Commissioner of Accounts are of great importance for the efficient administration of the huge machinery of government in the city of New York. They will be rendered to a large extent abortive if his subpœnas are to be quashed in advance of any hearing at the instance of unwilling witnesses upon forecasts of the testimony and nicely balanced arguments as to its probable importance. Very often the bearing of information is not susceptible of intelligent estimate until it is placed in its setting, a tile in the mosaic. Investigation will be paralyzed if arguments as to materiality or relevance, however appropriate at the hearing, are to be transferred upon a doubt-

ful showing to the stage of a preliminary contest as to the obligation of the writ. Prophecy in such circumstances will step into the place that description and analysis may occupy more safely. Only where the futility of the process to uncover anything legitimate is inevitable or obvious must there be a halt upon the threshold.

The order of the Appellate Division should be reversed and that of the Special Term affirmed with costs in the Appellate Division and in this court.

POUND, CRANE, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.