In the Matter of DAIRYMEN'S LEAGUE COOPERATIVE ASSOCIATION, INC., Respondent, against JOHN M. MURTAGH, as Commissioner of Investigation of the City of New York, Appellant.

First Department, December 20, 1948.

*Charles F. Preusse* of counsel (*W. Bernard Richland, Bernard Friedlander* and *Barbara Carroll* with him on the brief; *John P. McGrath, Corporation Counsel,* attorney), for appellant.

*Theodore Kiendl* of counsel (*Spencer Byard* with him on the brief; *Davis Polk Wardwell Sunderland & Kiendl,* attorneys), for respondent.

CoHN, J. A subpœna duces tecum issued by appellant, the Commissioner of Investigation of the City of New York, on August 4, 1948, served upon respondent, Dairymen's League Cooperative Association, Inc., called for the production of books and records of Dairymen's League showing (1) the names and addresses of all the League's retail and chain store customers in New York City who have purchased milk from the League at less than listed prices, the price per quart charged each such store and the number of quarts of milk sold them and (2) the names and addresses of all the League's retail and chain store customers who have received rebates in connection with the sales of milk and the amounts of rebates paid each.

Though respondent partially complied with the subpœna, it declined to supply the names and addresses of its customers who had received rebates and the amounts thereof. Respondent moved at Special Term to quash on the ground that there was no authorized investigation to which the subpœna was related; that the inquiry was invalid since it exceeded the powers of the Commissioner of Investigation, and that the disclosure of the information would be prejudicial as the names and addresses of its customers and the credit allowances given them were trade secrets, the disclosure of which would injure the Dairymen's League.

The Commissioner of Investigation shows that on June 17, 1948, the Mayor of New York City directed him to conduct an inquiry to ascertain whether those doing business in the milk industry in this city employed practices which have the effect of increasing the price of milk purchased by the city and by the general public and whether there is a tendency to restrict competition or to fix and maintain prices at artificial levels. The ultimate purpose of the investigation, we are told, is to determine whether State or local legislation is needed to assure the sale of milk to the city and its population at fair prices and the ascertainment of such facts regarding the distribution of milk as will enable the Mayor and the city authorities to take all necessary steps to bring about free competitive sales of adequate supplies of the commodity.

The city has a direct interest in the trade practices of the milk industry here. This interest arises from the fact that it spends annually many millions of dollars for milk supplies for its own institutions through the Department of Purchase, the Department of Welfare and the Board of Education, and also because the sale and distribution of milk is of major

importance to the health and well-being of the people of the city. " The distribution of milk is a business affected with a public interest — a phrase which has been defined as ' * * * the equivalent of " subject to the exercise of the police power." ' " (*Matter of Stracquadanio* v. *Dept. of Health,* 285 N. Y. 93, 98.) In view of the stated purposes for which the investigation is being conducted, we think that the subject matter of the inquiry was within the province of appellant.

The Commissioner of Investigation has power " To investigate and inquire into all matters of concern to the city or its inhabitants, and to require and enforce by subpœna the attendance of witnesses at such investigations " by virtue of the explicit language of subdivision 21 of section 20 of the General City Law.

Section 803 of the New York City Charter also specifies the powers of the Commissioner of Investigation to conduct investigations. It provides as follows:

" § 803. Powers and duties.— The commissioner:

" 1. Shall make any investigation directed by the mayor or the council.

" 2. Is authorized and empowered to make any study or investigation which in his opinion may be in the best interests of the city, including but not limited to investigations of the affairs, functions, accounts, methods, personnel or efficiency of any agency."

The Mayor is under a duty to communicate to the council annually a general statement as to the finances, affairs and activities of the city and its agencies; to recommend to the city council legislation which he deems necessary or desirable; to keep himself informed as to the activities of city agencies; to take measures for the efficient conduct of their business, and to cause all provisions of law to be enforced. (City Charter, § 5.) He may command any investigation which will supply him with information required (City Charter, § 803) for the proper discharge of his responsibilities, so long as it is ordered in good faith and the information sought is reasonably related to the carrying out of the Mayor's duties, one of which is recommending legislation where the subject matter calls for legislative action in order to advance the city's interests. (*Matter of Hertle* [*Ahearn*], 120 App. Div. 717, 720, affd. 190 N. Y. 531.)

The present investigation is directed not only toward ascertaining facts regarding existing methods under which milk is

procured by city agencies, but also toward a formulation of improved procedures for purchasing milk and the framing of any legislation which may be necessary to enable the city and its inhabitants to purchase milk at fair and reasonable prices. The authority of the Commissioner of Investigation to obtain facts needed to accomplish, by new legislation or otherwise, the improvement of methods of operating city agencies has been repeatedly sustained. (*Matter of Edge Ho Holding Corp.*, 256 N. Y. 374, 380; *Matter of Hirshfield* v. *Craig*, 239 N. Y. 98, 112; *Matter of Hertle* [*Ahearn*], *supra*; *Matter of Chase National Bank* [*Blanshard*], 155 Misc. 595, 600–601.) Moreover, the prices paid for milk by the city and its inhabitants are matters of concern to both. The practice of granting rebates might have an important bearing upon the prices paid for milk by the city departments and by the people themselves. In subpoenaing the records of respondent pertaining to credit allowances or rebates, appellant was acting within powers conferred upon him by statute.

We find no merit in the contention that the records called for by the subpoena duces tecum are irrelevant to the subject matter of the investigation. A subpoena duces tecum of the Commissioner of Investigation may not be vacated unless the person subpoenaed can demonstrate that it calls for documents which are utterly irrelevant to any proper inquiry. This rule was concisely stated by Chief Judge CARDOZO in the leading case of *Matter of Edge Ho Holding Corp.* (*supra*). In rejecting a claim that a subpoena issued by the Commissioner of Accounts (the predecessor of the Commissioner of Investigation) was not issued in good faith, Chief Judge CARDOZO said (pp. 381–382): " The powers devolved by the charter upon the Commissioner of Accounts are of great importance for the efficient administration of the huge machinery of government in the city of New York. They will be rendered to a large extent abortive if his subpoenas are to be quashed in advance of any hearing at the instance of unwilling witnesses upon forecasts of the testimony and nicely balanced arguments as to its probable importance. Very often the bearing of information is not susceptible of intelligent estimate until it is placed in its setting, a tile in the mosaic. * * * Only where the futility of the process to uncover anything legitimate is inevitable or obvious must there be a halt upon the threshold."

The moving papers on the motion to vacate fail to establish any " futility of the process to uncover anything legitimate " and do not show that the records sought are irrelevant.

An inquiry as to the names and addresses of customers of respondent to whom rebates were allegedly granted and to what extent might not seem pertinent at the present time. However, the investigation into these matters might prove very material later. It may well be that in the conduct of a thorough inquiry, such customers should also be interrogated. The " futility of the process to uncover anything legitimate " here is neither inevitable nor obvious (*Matter of Edge Ho Holding Corp., supra*).

That the information sought as to secret credit allowances granted by Dairymen's League to retail stores is confidential and involves trade secrets, is no excuse for a refusal to produce the records needed by the Commissioner of Investigation in an authorized inquiry (*Matter of Blitzer* v. *Bromberger*, 295 N. Y. 596; *Matter of Chapman*, 166 U. S. 661, 669; *Matter of Wallstein*, 178 App. Div. 140, 141).

The argument is advanced that the powers of the Commissioner of Investigation are limited to examination of city departments and do not extend to an inquiry into the methods and activities of those who do business with the city. The language employed in the New York City Charter (§§ 803, 805) and in the General City Law (§ 20, subd. 21) does not so restrict the powers of appellant. So long as a subpœna duces tecum issued by him is directed toward the production of books, records and documents which are material and relevant to the issue in an authorized investigation, there is no basis for interference with the exercise of his power (*Matter of Blitzer* v. *Bromberger, supra*; *Matter of Toch Realty Co.*, 256 N. Y. 655, revg. 232 App. Div. 760; *Matter of Scheer Realty Co., Inc.*, v. *Higgins*, 257 N. Y. 541; *People* v. *Kornblith*, 270 App. Div. 925, affd. 296 N. Y. 738). The courts will be quick and firm to halt the employment of the power to investigate for irrelevant, illegitimate or oppressive purposes (*Matter of Hirshfield* v. *Hanley*, 228 N. Y. 346, 349), but we are unable to discern any such impropriety here.

For the foregoing reasons the order appealed from should be reversed, with costs to appellant, respondent's motion to vacate the subpœna duces tecum should be denied, and appellant's cross motion to enforce the subpœna duces tecum should be granted.

GLENNON, J. P., DORE, CALLAHAN and SHIENTAG, JJ., concur.

Order unanimously reversed, with $20 costs and disbursements to the appellant, the respondent's motion to vacate the subpœna duces tecum denied and the appellant's cross motion to enforce the subpœna duces tecum granted.