Frank Del Vecohio, J.
This is an application for an order to vacate, cancel and set aside a subpoena duces tecum served upon the petitioners by the Joint Legislative Committee on Government Operations.
The committee was duly created in 1955 by the Legislature of the State of New York to investigate and examine into the management of any State department, bureau, commission or other agency of the State, empowered, among other things, to make studies of the operations of State Government and the administration of State and local laws to determine their efficiency and effectiveness and to detect and prevent unsound, improper and corrupt practices.
The powers of the committee are set forth in detail in Concurrent Resolution of the Senate and Assembly of April 2, 1955. By appropriate resolution the committee’s jurisdiction was extended to municipalities and its existence continued through March 31, 1958. Among its powers the committee is authorized to take testimony, subpoena witnesses and require the production of books, records and papers.
The verified petitions state that a subpoena duces tecum issued by the chairman of the committee was served on each petitioner on or about November 30, 1957, which read as follows: “We Command You, That all business and excuses being laid aside, you appear and attend before a meeting of the Joint Legislative Committee on Government Operations of the Legislature of the State of New York on the 12th day of December 1957, at 10:00 o’clock in the forenoon, at room 448, The Capitol, Albany, New York to testify and give evidence as to the investigation into the affairs of the New York State Police and bring with you all papers, books, documents, records and things referring to the above matter, and, in particular, those items listed on the attached schedule, if any, and for failure to attend you will be deemed to be guilty of a contempt of the Legislature of the State of New York.”
The petitioners contend, among other things, that the inquiry is without legitimate object, that the subpoenas are no more than a fishing expedition by the committee in an effort to harass or degrade petitioners because they have no direct or indirect con *695 tact with or knowledge of the affairs of the State Police and no general, special or particular knowledge or information or sources of information as to police methods, procedure or effectiveness that would assist the committee in the investigation of the affairs of the State Police or in the consideration and enactment of any necessary remedial legislation.
The affidavit of the chief counsel for the committee states that on November 14, 1957 “about sixty-five individuals from many parts of the State of New York as well as from points as far distant as Florida, California, Texas, and Cuba met at the home of Joseph Barbara in Apalaehin. Members of the New York State Police, accompanied by certain Federal officials, were noticed observing the Barbara residence. Thereupon the sixty-five individuals, referred to above, promptly attempted to leave the premises in their automobiles. Many attempted to hide in the surrounding woods but were flushed out by members of the New York State Police. The police accosted each group as it was departing and learned the identity of the assembled individuals. An unusual number are known in police circles as leaders of organized rackets including the distribution of narcotics. Many of the sixty-five have records of conflict with the law, including convictions for dealing in narcotics, for extortion, and for bootlegging (during prohibition days) and arrests for almost every serious crime including murder. The identity of these individuals, particularly those described as the leaders, and the great distances they had traveled to meet at Apalaehin, obviously not a casual meeting, has caused many law enforcement officials to conclude that this meeting was a * convention ’ of the infamous Mafia, a criminal syndicate operating throughout the United States, Cuba and the world. Among those present were Joseph Profaci of Brooklyn, New York, described in the Third Interim Report of the Special Committee to Investigate Organized Crime in Interstate Commerce (Kefauver Committee) as ‘ one of the top leaders of the Mafia \ Another was Vito Genovese of Highlands, New Jersey, believed by police experts to be another of the top leaders of the Mafia, and was known to have been a close associate of the notorious Albert Anastasia, recently murdered in New York City in ‘ gang-land ’ style. ’ ’
It appears also that each of the individuals present including the two petitioners was questioned briefly by officers of the State Police and then released without further ado.
As a result of this meeting, the action of the State Police in connection therewith, and the widespread notice given in the press and on the radio throughout the country, the committee *696 began an inquiry into the State Police’s handling of this matter and scheduled hearings to commence December 12, 1957 to ascertain whether the New York State Police have been and are dealing effectively and efficiently with the problems of organized crime and whether the powers and duties of the State Police under existing laws are adequate.
Petitioners do not challenge the legality of the committee as such nor do they question its jurisdiction to inquire into the operation of the New York State Police and to issue subpoenas to compel attendance of witnesses and production of records at hearings held in connection therewith. The issue here raised is whether the proposed examination of petitioners is within the scope of the committee’s authorized investigation.
In support of their claim that it is not, petitioners assert that they know nothing of the operation of the State Police, having had contact with that agency on only one brief occasion during the past several years, that their appearance before the committee will be nonproductive and futile, and that the sole purpose of the committee is to conduct a fishing expedition in an effort to harass and degrade petitioners.
The arguments implicit in these statements have been answered by Lewis, J. (later Ch. J), speaking for the Court of Appeals in Matter of Joint Legis. Comm. (Teachers Union) (285 N. Y. 1, 9): “In the present proceeding, as we have seen, we must assume that the legislative inquiry was well intended. If a subpoena is to be quashed in advance of a committee hearing, upon a forecast of the testimony sought and arguments as to its probable effect, the purpose of the inquiry may be thwarted. We cannot say as matter of law, upon the record at hand, that the subpoena now challenged would be futile as an aid to the legislative inquiry instituted by the Joint Resolution. It is only when futility of such process is inevitable or obvious that there must be ‘ a halt upon the threshold ’ of the inquiry. (Matter of Edge-Ho Holding Corp., 256 N. Y. 374, 382.) Proof of such futility is not in the record before us.”
The affidavit submitted on behalf of the committee in opposition to the present application makes it clear that petitioners are not to be called as experts on the operation of the State law enforcement agency but that they are to be examined specifically as to the nature and details of the business transacted at the November 14 meeting in Joseph Barbara’s home and their connections and associations with those present, many of whom are known criminals.
The character of the persons attending the meeting, together with their conduct upon discovering the presence of law enforce *697 ment officials at the scone, is sufficient, in the opinion of this court, to bring the occurrence within the legitimate scope of inquiry of a committee charged with a broad investigative power over the enforcement of State and local laws. Further information as to the purpose of the meeting, the relationship of the participants and the conduct of the peace officers involved may well be pertinent to a study of the operation and efficiency of the State Police and of the need for additional legislation to aid such agency in the proper performance of its duties. Having concluded that the committee acted within its jurisdiction as a legislative investigating body, this court cannot interfere with the exercise of their discretion and is without authority to quash the subpoena. (People ex rel. McDonald v. Keeler, 99 N. Y. 463; Lanza v. New York State Joint Legis. Comm., 3 N Y 2d 92.)
Petitioners also contend that the command to produce is too broad and indefinite to be proper.
The subpoena calls for all papers, books, documents, records and things referring to the affairs of the New York State Police, and in particular, those items listed on the attached schedule, if any. There is no schedule attached.
The general rule is that a subpoena duces tecum cannot be issued as a mere fishing examination but must describe the documents desired with reasonable certainty and sufficient definiteness to enable the witness to identify them without any prolonged or extensive search. (Hale v. Henkel, 201 U. S. 43; Matter of Sun-Ray Cloak Co., 256 App. Div. 620.)
The subpoena served on petitioners does not state specific papers which they are required to produce at the hearing. It is not necessary, however, that the subpoena duces tecum designate each particular paper which is desired, for rarely if ever •does the body desiring the papers have the accurate knowledge which would be required therefor. (Consolidated Rendering Co. v. Vermont, 207 U. S. 541, 554.) The test is whether the subpoena is sufficiently definite to inform the witness of what is demanded. (Shotkin v. Nelson, 146 F. 2d 402.)
This court is of the opinion that the subpoena here in question meets that requirement. As the court interprets the order, petitioners are advised that they are to produce papers in their possession, if any, which refer to the affairs of the New York State Police. These would be material and relevant to the inquiry. Nothing more is required.
At the time this motion was argued the attorney for petitioners requested an opportunity to file a memorandum of law in support of their position. The court, pointing out that the motion would become moot unless decided before December 12 *698 (the date set for the committee hearing)*, gave petitioners until noon on December 11 to file the memorandum. At about 11:00 a.m. on this date the memorandum was submitted and, although nothing had been said on argument about further affidavits, it was accompanied by reply affidavits setting forth among other things that petitioners were never personally served with the subpoena duces tecum.
This was not the basis of the motion as presented to and argued before the court at Special Term. Therefore the court does not pass upon the propriety of the service.
The motions to vacate the subpoena duces tecum upon the ground that the proposed examination of petitioners is not within the scope of the committee’s authorized investigation are denied.
Prepare order accordingly.

 The original show cause order by which the motion was brought on contained a provision for a temporary stay of the subpoena pending determination of the motion. However, this provision was stricken out by the Justice who granted the order to show cause.