MERCHANDISE WAREHOUSE COMPANY, Plaintiff, v. BOWERS, Tax Commissioner, Defendant.

Common Pleas Court, Franklin County.

No. 201940. Decided January 25, 1960.

*Messrs. Hahn, Loeser, Keough, Freedheim & Dean,* for plaintiff.

*Mr. Mark McElroy,* attorney general, and *Mr. Robert S. Kosydar,* assistant attorney general, for defendant.

For further history see *Omnibus Index* in bound volume.

LEACH, J. This case is before the Court for decision on the merits, such cause having been submitted solely on the pleadings and briefs of counsel and without the introduction of any evidence.

The petition herein, for declaratory judgment, reads as follows:

"Now comes the plaintiff, Merchandise Warehouse Company, and for its cause of action against the defendant says that it is a corporation organized and existing under and by virtue of the laws of the State of Ohio, and that the defendant, Stanley J. Bowers, is the duly appointed and acting Tax Commissioner of the State of Ohio.

"Plaintiff further says that the defendant, Stanley J. Bowers, Tax Commissioner of the State of Ohio, had issued to the plaintiff on June 13, 1958, a Subpoena For Witness and Records, and had issued to the plaintiff on June 30, 1958, a Subpoena For Witness and Records, copies of same being hereto attached, marked Exhibits "A" and "B" respectively, and made a part hereof, requesting plaintiff to produce all of plaintiff's warehouse stock records which indicate the names of persons storing

merchandise or inventory at plaintiff's Columbus, Ohio warehouse facilities and the quantities of such property on hand as of January 1, 1956 and 1957, in order that an examination thereof may be made by the defendant or his duly authorized agents.

"Plaintiff says further that the defendant contends that he is entitled to examine the records requested in his subpoenas of June 13, 1958 and June 30, 1958 under authority of Section 5703.20, Revised Code, which reads as follows:

" 'Section 5703.20, Revised Code. Power to require production of books by order or subpoena. (Section 1465-13, General Code.) The tax commissioner may require, by order or subpoena served on any company, firm, corporation, person, association, partnership, or public utility in the same manner that a summons is served in a civil action in the court of common pleas, the production within this state, at such time and place as the commissioner designates of any books, accounts, papers, or records kept by such company, firm, corporation, person, association, partnership, or public utility in any office or place within or without the state, or verified copies in lieu thereof if the commissioner so orders, so that an examination thereof may be made by the commissioner.

" 'No such company, firm, corporation, person, association, partnership or public utility shall fail to comply with any such order or subpoena; for each day it so fails it shall pay into the state treasury a sum of not less than fifty nor more than five hundred dollars.'

"Plaintiff contends that the defendant is acting illegally and beyond the scope of his authority and is not entitled under Section 5703.20, Revised Code, or any other section of the Code to the information requested in his subpoenas of June 13, 1958 and June 30, 1958.

"Plaintiff further says that Section 5703.20, Revised Code, is in violation of its rights under the Constitution of the United States and the Constitution of Ohio, and that it is violative of the Fourteenth Amendment of the Constitution of the United States and of Section 14, Article 1 of the Constitution of Ohio, forbidding unreasonable searches and seizures; and that such statute is arbitrary, discriminatory and unreasonable.

"Wherefore, plaintiff prays for a declaratory judgment determining whether or not the defendant, Stanley J. Bowers, Tax Commission of the State of Ohio, is entitled to receive the information requested in the subpoenas of June 13, 1958 and June 30, 1958, and further prays for a declaratory judgment as to the validity and constitutionality of said Section 5703.20, Revised Code."

Exhibit "A" is a subpoena to Clara B. Karn, Treasurer of the plaintiff, to appear before Charles L. Green and Keith H. Smith, agents of the Department of Taxation at the business offices of the plaintiff, on June 30, 1958, at 9:00 A. M. "and bring with her and produce at such time and place all warehouse stock records of Merchandise Warehouse Company which indicate the names of persons storing merchandise or inventory at said company's Columbus, Ohio, warehouse facilities and the quantities of such property on hand as of January 1, 1956 and 1957, in order that an examination thereof may be made by the Tax Commissioner's duly authorized agents, and then and there to testify as to said records, and this do under penalty of law."

Exhibit "B" is essentially identical to Exhibit "A" except as to date.

The only other pleading is the answer of the defendant which reads as follows:

"Now comes Stanley J. Bowers, defendant herein, and for answer admits that:

"1. Plaintiff, Merchandise Warehouse Company, is a corporation organized and existing under and by virtue of the laws of the State of Ohio and defendant, Stanley J. Bowers, is the duly appointed and acting Tax Commissioner of the State of Ohio.

"2. Defendant, Stanley J. Bowers, as Tax Commissioner of the State of Ohio, had issued to plaintiff on June 13 and June 30, 1958, subpoenas for witnesses and records, which subpoenas requested plaintiff to produce all of its warehouse stock records which indicate the names of persons storing merchandise or inventory at plaintiff's Columbus, Ohio, warehouse facilities and the quantities of such property on hand as of January 1, 1956, and 1957, in order that an examination thereof might be made by defendant or his duly authorized agents.

"3. Defendant contends that he was and is entitled to examine the records requested in his subpoenas of June 13 and June 30, 1958, under authority of Section 5703.20, Revised Code.

"Further answering, defendant generally denies each and every other allegation not hereinabove admitted to be true.

"Wherefore defendant prays that plaintiff's petition for a declaratory judgment be dismissed with costs taxed to plaintiff."

Extensive briefs have been filed, containing numerous citations, all of which have been examined, most of which, in our opinion, need not be referred to herein.

Although, apparently independently of the constitutional question, the petition alleges that defendant "is not entitled under Section 5703.20, Revised Code, or any other sections of the Code to the information requested in his subpoenas of June 13, 1958, and June 30, 1958," it appears from the briefs that actually no assertion is being made that the text of Section 5703.20, Revised Code, does not purport to authorize the defendant to issue the subpoenas in question. In any event it is clear that such action is authorized by the language actually employed in this statute.

Basically it appears to be the contention of the plaintiff that the action of the defendant in issuing such subpoenas, is in violation of the Constitutions of the United States and of the State of Ohio pertaining to "unreasonable searches and seizures," first, on the basis that the *entire* statute purporting to authorize such subpoenas is unconstitutional, and second, on the basis that the *particular* subpoenas in question constitute an attempt to make an "unreasonable" search and seizure.

While by way of preliminary sparring, there has been much discussion in the briefs as to the relevancy of the Fourth Amendment to the Constitution of the United States to the issues here presented, actually counsel are in agreement that the Fourth Amendment, insofar as its specific terms are concerned, is directed exclusively against the activities of the federal government and has no application to the states or their agencies. See *State* v. *Lindway*, 131 Ohio St., 166, *State, ex rel. Eaton* v. *Price*, 168 Ohio St., 123. This possibly might be explained by the fact that the petition as originally filed, and before an

amendment by interlineation, instead of alleging a violation of the 14th Amendment, alleged a violation of the Fourth Amendment.

Actually it is the contention of the plaintiff in this regard that, while the Fourth Amendment by its specific terms is not applicable, the "due process" cause of the 14th Amendment has the effect of making enforceable against the states "the core" of the Fourth Amendment which is basic to a free society. *Stefanelli* v. *Minard*, 342 U. S., 117. Plaintiff also asserts that federal court decisions interpreting the "unreasonable searches and seizures" provisions of the Fourth Amendment should be accepted as a proper interpretation of the same language contained in Article I, Section 14, Ohio Constitution. Counsel for the defendant as to the latter assertion, contends that while if a search and seizure was so unreasonable as to constitute a deprivation of life, liberty or property, without due process of law, such would violate the 14th Amendment, the United States Supreme Court's decisions on this subject matter do not justify the simple conclusion that any activity which, if done by the federal government would violate the Fourth Amendment, would ipso facto constitute a violation of the due process clause of the 14th Amendment, or justify the conclusion that such decisions would be binding upon a state court in its interpretation of Article I, Section 14, Ohio Constitution. While we are inclined to agree with the contention of counsel for the defendant in this regard, and believe that our inclination is supported by the end result (if not by all of the language), in the *Stefanelli case*, as well as the decisions in *Wolf* v. *Colorado*, 338 U. S., 25 and *Rochin* v. *California*, 342 U. S., 165, we conclude that this issue need not be decided herein.

Assuming that all of the United States Supreme Court decisions cited herein as to the Fourth Amendment would be binding upon this Court in its interpretation of the 14th Amendment and its interpretation of Article I, Section 14, Ohio Constitution, we nevertheless conclude for reasons hereinafter set forth, that Section 5703.20, Revised Code, is not unconstitutional on its face and further conclude that the records of the plaintiff sought to be examined by the defendant, would not constitute an "unreasonable" search under either the federal or the state constitution.

As heretofore noted, the first contention of the plaintiff is that Section 5703.20, Revised Code, is unconstitutional on its face. Here it is asserted that the language of this statute authorizes the Tax Commissioner to require the production of "any" books, accounts, papers or records and that this statute contains no language of limitation as to relevancy or materiality to any investigation, proceeding, suspected tax avoidance, or public purpose whatsoever. By way of contrast, reference is made to statutes of other states granting subpoena powers to tax officials containing such language as "relating to any matter which the department shall have authority to investigate or determine," "pertinent to the investigations and inquiries which it is authorized to conduct," "pertinent to any assessments, investigations, or inquiry," "whenever necessary in the prosecution of any inquiries necessary or proper in their official capacity," "within the scope of the inquiry or investigation being conducted by the department," etc.

In considering this issue, it is important to keep in mind that this is a separate and distinct issue from that of whether the particular records sought would constitute an "unreasonable search," although the two issues have been somewhat intertwined in the briefs of counsel. Considered as a separate and distinct issue, such issue may be stated as follows: Plaintiff contends that even if the particular subpoenas in question would not constitute an "unreasonable search," that nevertheless the text of Section 5703.20, Revised Code, by purporting to authorize the Tax Commissioner to require the production of *any* records without regard to relevancy or materiality or even to whether the Tax Commissioner otherwise was acting within the scope of duties imposed upon him by statute, would thus authorize the Tax Commissioner to conduct "unreasonable searches and seizures" and thus is unconstitutional on its face, even if the particular search here involved would constitute a reasonable search.

In our opinion, such contention, when so stated, answers itself. In the first place the Court does not in actions in declaratory judgment, render advisory opinions as to some other possible factual situation, not here involved. In the second place, we are of the opinion that, although not explicitly stated in

Section 5703.20, Revised Code, itself, the authority of the Tax Commissioner to require the production of records by subpoena, is necessarily limited by implication to such production in investigations, proceedings, etc., within the scope of his official duties as Tax Commissioner.

Where the validity of an act is assailed on constitutional principles and there are two possible interpretations, one of which would render it valid and the other invalid, a Court should adopt the former so as to bring the act into harmony with the constitution, and should give a statute a restricted meaning where the application of an unrestricted meaning would render the statute unconstitutional. 10 Ohio Jurisprudence 2d, 242, 243.

It is clear, we believe, and no real dispute between the parties, that the Tax Commissioner in issuing the subpoenas in question, was acting within the scope of his duties in such capacity. Section 5709.01, Revised Code, provides for the taxation of all personal property located and used in business in this state. Section 5701.08, Revised Code, defines for the purposes of taxation, the term "used in business," and provides inter alia that personal property is used within the meaning of used in business when stored unless it is "merchandise or agricultural products shipped from outside of the state and held in this state in a warehouse or place of storage for storage only and for shipment outside of this state." Chapter 5711, Revised Code, provides for the listing of such personal property and Section 5711.09, Revised Code, specifically provides that the Tax Commissioner shall administer these sections.

We turn now to the second contention of the plaintiff which, as heretofore stated, is to the effect that the particular subpoenas in question, in calling for the production of records indicating the names of persons storing merchandise for inventory at plaintiff's warehouse facilities and the quantities of such property on hand as of January 1, 1956 and 1957 (tax listing dates), would constitute an unreasonable search and seizure.

At the outset, although perhaps not too important in this overall question, we think that the word "seizure" should be eliminated from our further discussion. We find nothing in

the subpoena which would call for the surrender to the defendant of the plaintiff's records. While a "search" obviously is involved, no elements of a "seizure" are involved.

Before proceeding to a consideration of the major contentions of the plaintiff in this regard, some reference should be made to the assertion at page 13 of plaintiff's opening brief to the effect that a "great volume" of records will be required to be produced and that "Hours of valuable business time will be required during the process of any such examination." In view of the fact that this case was submitted by agreement of counsel solely on the pleadings and briefs, we are in possession of no factual information relative to the comparative volume of such records or the hours required during the process of such examination.

In the recent case of *Frank v. State of Maryland,* 79 Supreme Court, 804, in which it was held that a health inspector of the City of Baltimore, did not require a search warrant in order to enter a home to conduct a health inspection, Mr. Justice Frankfurter stated:

"Application of the broad restraints of due process compels inquiry into the nature of the demand being made upon individual freedom in a particular context and the justification of social need on which the demand rests."

In the instant case, the "justification of social need" rests on a firm foundation, the principle that taxes should not be avoided. When weighed against the nature of the demand, we are in agreement with the following language contained in the opinion in *Washington National Bank v. Daily,* 166 Ind., 631, 77 N. E., 53:

"* * * Any one who avoids payment of his ratable share of taxes violates the law, and when such evasion is being attempted it is the public duty of banks, as well as of all other persons and corporations having knowledge or evidence of such attempt, when called upon by proper authority, to disclose it, whether written or parol. There is no more moral excuse or legal justification for concealing the delinquency of the 'tax dodger' than for any other class of law-breakers. If a person enters upon the street in an intoxicated condition, or misbehaves at a public meeting, any one summoned as a witness to

either of these unlawful incidents is compelled to attend and testify without compensation so far as the state is concerned. Likewise the citizen must respond to the supervisor's summons to labor upon the highway without compensation other than the benefit he received in common with the public. He must also join the sheriff's posse comitatus, without compensation, when commanded to do so. These and many other public duties rest upon the principle that every citizen, as an integral part of the state, has a personal interest in the execution of all the laws which the people have enacted for enforcement against themselves, for the benefit of themselves. Private right and personal interest must make reasonable concessions to public necessities. The power to compel the attendance of witnesses in both civil and criminal cases, and give testimony under oath, and produce their private books and papers, when material to the vindication of the rights of others, for an arbitrary and often inadequate compensation, rests upon the same ground, and all upon the theory that in rendering to the public such particular service the actor receives his compensation in the better enforcement of the laws.''

Insofar as state court decisions are concerned, plaintiff has relied to some extent on the case of *Wallace, State Tax Commissioner*, v. *Hughes Electric Company*, 41 N. Dak., 418, 171 N. W., 840. That case, in our opinion, is completely distinguishable. While the Court therein did hold that the Tax Commissioner of North Dakota, under the facts there involved, did not have the power to compel obedience to an order for the appearance of a witness and the production of certain records and books, a careful examination of the opinion reveals that it was bottomed on the holding that under the law of North Dakota, the local assessors and not the Tax Commissioner, had the power of assessments. Thus the Tax Commissioner, in effect, was acting beyond the scope of his legislative authority. This should be contrasted with the Ohio law which vests in the Ohio tax commissioner, the administration of the personal property tax laws. Section 5711.09, Revised Code.

To the extent that the Wallace case might be thought to be in point, we also are in agreement with the conclusion expressed in the majority opinion of the Washington Supreme Court in

*Gange Lumber Co.* v. *Henneford*, 53 Pac. 2d, 743, 103 A. L. R., 513, that the Wallace case is "clearly a minority holding."

Without attempting to set forth the many state court decisions bearing directly or indirectly on this subject, but merely by way of example, see *Johnson* v. *Halpin*, 413 Ill., 257, 108 N. E. 2d, 429; *Co-operative Building and Loan Association* v. *State, ex rel. Daniels*, 156 Ind., 463, 60 N. E., 146; and *In re Chase National Bank*, 280 N. Y. S., 440, 155 Misc., 595.

The only decision of the Ohio Supreme Court pertaining in any way to this subject matter, is the case of *Ex parte Bevan*, 126 Ohio St., 126. The seventh paragraph of the syllabus of that case reads as follows:

"In an action charging fraudulent conspiracy by the officers of a corporation, because of the tendency toward liberality in cases of this character, the range of the testimony is wide, and subpoenas duces tecum, which command that the entire correspondence file, records and documents of such corporation for many years back, be produced before the notary public by the officers of the corporation, to be used in connection with the giving of their depositions as upon cross-examination, are not so broad and sweeping as to be violative of due process, and do not constitute unreasonable searches and seizures."

We turn now to a consideration of the decisions of the United States Supreme Court relied upon by the plaintiff. Reference is made to *Hale* v. *Henkel*, 201 U. S., 43; *Ellis* v. *Interstate Commerce Commission*, 237 U. S., 434; *Silverthorne Lumber Co. Inc.* v. *United States*, 251 U. S., 385; *Federal Trade Commission* v. *American Tobacco Co.*, 264 U. S., 298; *Oklahoma Press Publishing Co.* v. *Walling, Wage and Hour Administrator*, 327 U. S., 186, and *United States* v. *Morton Salt Company*, 338 U. S., 632.

While these cases deal with federal agencies and thus pertain to the Fourth Amendment, we will accept the proposition that their holdings should be given great weight in the interpretation of Article I, Section 14, Ohio Constitution, and should also be given consideration in an interpretation of the 14th Amendment.

In the Oklahoma Trust case the basic principles of these cases, and others, were summarized by Justice Rutledge as follows:

"Without attempt to summarize or accurately distinguish all of the cases, the fair distillation, in so far as they apply merely to the production of corporate records and papers in response to a subpoena or order authorized by law and safeguarded by judicial sanction, seems to be that . . . the Fourth (Amendment), if applicable, at the most guards against abuse only by way of too much indefiniteness or breadth in the things required to be 'particularly described,' if also the inquiry is one the demanding agency is authorized by law to make and the materials specified are relevant."

These principles were also summarized in the Morton Salt case by Justice Jackson as follows:

"Of course, a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power. * * * (Cases omitted.) But it is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant."

From these cases counsel for the plaintiff asserts that a two-fold test has been established with respect to the validity of a subpoena: (1) The subpoena must be definite and restricted in its scope and (2) It must also be reasonably relevant to some pending proceeding or investigation. Counsel for plaintiff asserts that the Tax Commissioner herein and his counsel apparently refused to recognize the latter test.

As to the first test, it is apparent that the subpoenas here in question are not defective as having "too much indefiniteness or breadth in the things required to be particularly described" (Oklahoma Press case). Nor is the demand "too indefinite" (Morton Salt case).

Basically the nub of the assertion of counsel for the plaintiff is that a subpoena is invalid as constituting an unreasonable search "unless some relevancy is shown to a pending proceeding or investigation *against specified persons.*" Thus counsel for the plaintiff asserts, in effect, that until such time as the Tax Commissioner would designate in the subpoena the name of the potential tax payer or tax payers under investigation, the requirement of relevancy is not met.

Obviously the information sought is relevant to the official

scope of the powers and duties of the Tax Commissioner of Ohio. The quoted language of Justice Rutledge in the Oklahoma Press case and of Justice Jackson in the Morton Sale case speak merely of relevancy. From an examination of these cases and of the other cited cases, we find no holding or implication that if information sought is relevant to an investigation which is authorized by law, that the witness is entitled to information as to the name or names of persons under investigation. This assertion therefore, does not appear to be upheld by any of the cases presumably cited in support thereof.

Counsel for the plaintiff also asserts that even if the inquiry need not necessarily be directed against a named person alleged to have violated a specific law, it at least must be relevant "to a pending investigation." In our opinion, since the Tax Commissioner has the power to conduct investigations in the administration of the personal property tax laws in order to determine tax avoidance, the very issuance of these subpoenas is a part of a "pending investigation."

As heretofore stated, this case is before the Court solely on the pleadings, no evidence having been introduced. Surely under this state of the record we cannot presume that the Tax Commissioner was seeking this information for reasons of his own, unrelated to the administration of his office, or for the purpose of any deliberate harrassment of the plaintiff. Instead we must presume that such investigation was being made in good faith and with a reasonable expectation of ascertaining information which would lead to a tax assessment.

It, of course, is true that the acquisition of the knowledge here sought would not, in and of itself, show tax liability or non-liability as to those persons or corporations storing merchandise on tax listing day with the plaintiff. As stated in the case of *In re Chase National Bank, supra,* an inquiry must begin somewhere and someone must be the first to receive a subpoena. "Only where the futility of the process to uncover anything legitimate is inevitable or obvious, must there be a halt upon the threshold." *In re Edge Ho Holding Corporation*, 256 N. Y., 374, 381.

In *Cooperative Building and Loan Association* v. *Daniels, supra,* the power of taxing officer to subpoena the records was

upheld "for the purpose of finding omitted property, irrespective of the pendency of proceedings against any tax payer to add omitted property to the duplicate." No "pending proceedings" against any particular taxpayer were involved in *Gange Lumber Company* v. *Henneford, supra.*

Counsel for the plaintiff characterizes the investigation of the Tax Commissioner as merely a "fishing expedition." This language was employed by Justice Holmes in the *Ellis case* and the *American Tobacco case.*

The meaning of such terminology must be determined by an examination of the context in which employed. In the *Ellis case* certain questions propounded to the Armour Carlines pertained to information beyond the scope of the powers and duties of the Interstate Commerce Commission, it being held that such car lines were not subject to regulation by the Commission. It will be noted at page 446 of the opinion in 237 U. S., that it was held that certain questions should be answered and others need not be answered. Thus, in our opinion, the dividing line between the proper questions and the improper questions and the proper records and the improper records, was simply the dividing line as to the relevancy of the information sought when applied to the authority of the Interstate Commerce Commission to take any action with relation thereto.

In the *American Tobacco case,* Mr. Justice Holmes stated that "It is contrary to the first principles of justice to allow a search to *all* of the respondent's records, *relevant* or *irrelevant*, in the hope that something will turn up." That, in our opinion, with the presumption of the reasonableness of the defendant's actions and with no evidence to the contrary, is not the situation presented herein.

In summarization we conclude that the defendant, Stanley J. Bowers, Tax Commissioner of the State of Ohio, is entitled to receive the information requested in the subpoenas of June 13, 1958, and June 30, 1958, and we further declare that Section 5703.20, Revised Code, is not unconstitutional on its face and that the action of the Tax Commissioner in issuing such subpoenas, as applied to the facts in this case which are before the Court, does not violate the provisions of the 14th Amendment of the United States Constitution or of Article I, Section 14, Ohio Constitution.

Final judgment to this effect is entered in favor of the defendant at the costs of the plaintiff. Entry may be prepared accordingly, reserving exceptions.