In the Matter of ALVIN L. WEIL et al., Petitioners, against NEW YORK STATE COMMISSION TO INVESTIGATE STATE AGENCIES IN RELATION TO PARI-MUTUEL HARNESS RACING, Respondent.

In the Matter of JOSEPH J. DOWLING et al., Petitioners, against NEW YORK STATE COMMISSION TO INVESTIGATE STATE AGENCIES IN RELATION TO PARI-MUTUEL HARNESS RACING, Respondent.

In the Matter of ALBERT M. DE MEO, Petitioner, against NEW YORK STATE COMMISSION TO INVESTIGATE STATE AGENCIES IN RELATION TO PARI-MUTUEL HARNESS RACING, Respondent.

Supreme Court, Special Term, Nassau County, January 18, 1954.

*Martin W. Littleton, Jr.,* for Alvin L. Weil and others, petitioners.

*Arthur Garfield Hays* and *Osmond K. Fraenkel* for Joseph J. Dowling and another, petitioners.

*Irving Cahn* for Albert M. De Meo, petitioner.

*George Trosk, Edwin L. Gasperini, Arnold A. Hackmyer, Clarence C. Ferguson, Jr.,* and *Robert D. Hughes* for respondent.

CONROY, J. These are three separate applications to quash, modify or limit subpœnas duces tecum served upon the six petitioners by the respondents constituting the New York State Commission to Study, Examine and Investigate State Agencies in Relation to Pari-Mutuel Harness Racing, hereinafter referred to as the Commission.

The Commission was established by an Executive Order, dated October 10, 1953, made pursuant to section 6 of the Executive Law, the Moreland Act (L. 1907, ch. 539, as amd. by L. 1928, ch. 131). Said Executive Order generally commissions respondents " to study, examine and investigate the management and affairs of the State Harness Racing Commission and any other state department, board or agency, in relation to pari-mutuel harness racing generally and, specifically in relation thereto," among other things, the following: " 1. The ownership and other financial interests, direct and indirect, in associations and corporations holding licenses for the conduct of harness race meets at which pari-mutuel betting is conducted, and interests, concessions, participations in income or other financial arrangements relating to the conduct of such meets, or the track at which such meets are held. 2. Whether there is any ownership, beneficial or otherwise, not revealed by the books of such corporations or associations. 3. Whether any public officer or other person holds stock or other interest in any such corporation, association or tract for which he has paid no consideration or inadequate consideration. 4. Whether any interest, direct or indirect, is held in any such corporation, association or track by persons who have been convicted of crime or persons of ill repute. * * * 6. The adequacy of present laws, practices and procedures for the supervision of harness tracks and of

harness racing, and to make recommendations in connection therewith. 7. The distribution of pari-mutuel revenues to determine whether the share of such revenues allocated to licensed harness racing corporations or associations under existing law is excessive. 8. The desirability of establishing a single administrator or a salaried commission with broad supervisory powers over harness racing. 9. The desirability of regulating or limiting financial interests or other relationships of public officers, party officers, officers of labor unions or others in or to harness racing and tracks at which such racing is conducted. * * * 11. The extent to which leases or other agreements, to which a corporation or association holding a license for a pari-mutuel harness race meet is a party and arrangements with concessionaires for such meets, should be regulated by the State Harness Racing Commission or other supervisory agency. * * * 13. Any other matters, activities or relationships which may or do affect any of the matters hereinbefore specified.''

The subpœnas served upon petitioners are in the same form including the description of the documents required to be produced. The only variation is in the date, January 1, 1944, from which the books and records of petitioner Dowling are to be produced; the subpœnas served on the other petitioners require them to produce the enumerated books and records from January 1, 1940. Except for the foregoing difference in date, each subpœna reads in its entirety as follows: '' 1. All books, records, correspondence, agreements, contracts, memoranda and other documents from January 1, 1940, to date, which are in your possession or subject to your control and which relate (i) to the ownership and other financial interests, direct and indirect, or in any other way, to associations and corporations, holding licenses for the conduct of harness horse race meets at which pari-mutuel betting is conducted, and (ii) to interests, concessions, participations in income or other financial arrangements in and in any way related to the conduct of such harness horse race meets, or the track at which such meets are held. 2. All pass books, check stubs or check stub books, cancelled checks, monthly statements, and records of deposits and withdrawals which are in your possession or subject to your control and which relate to all savings, checking, and loan association accounts in which you have or have had an interest, direct or indirect, from January 1, 1940, to date. 3. A list of all your bonds, mortgages, notes, loans, agreements, stock certificates, agreements of trust, indentures, and statements of

brokerage accounts or, in the alternative, produce all your bonds, mortgages, notes, loans, agreements, stock certificates, agreements of trusts, indentures, and statements of brokerage accounts, or photostatic copies thereof. 4. Copies of all your Federal income tax and New York State income tax returns, withholding statements, and declarations for each year from January 1, 1940, to date.''

Five of the petitioners in their two separate applications challenge only items 2, 3 and 4 of the subpœna and so much of item 1 thereof as relates to their interests in harness racing outside of the State of New York. They claim (a) that the Commission has no authority to require the production of personal books and records not relating to harness racing and (b) that the subpœna violates their constitutional rights in that it constitutes an unreasonable search and seizure in violation of section 8 of the Civil Rights Law, section 12 of article 1 of the New York State Constitution, and the due process clause of the Fourteenth Amendment of the United States Constitution. The petitioner De Meo in his separate application challenges each item of the subpœna on the same grounds and, in addition, on the ground that it violates the privilege which attaches to the attorney-client relationship.

No useful purpose would be served in relating the background which led to the present investigation, nor in detailing the precise connection of the respective petitioners with pari-mutuel harness racing in the State of New York since 1940.

The Commission has the unquestionable right to issue subpœnas. Section 6 of the Executive Law expressly empowers the Governor and the persons appointed by him '' to require the production of any books or papers deemed relevant or material.'' (Cf. *Dunham* v. *Ottinger*, 243 N. Y. 423, 434–435.) The petitioners other than De Meo contend, however, that the records enumerated in items 2–4 of the subpœnas served upon them, and so much of item 1 as refers to harness racing outside the State, have no connection with New York State harness racing, the subject of the Commission's inquiry; petitioner De Meo objects to all items, contending that since he is not an official of the State Harness Racing Commission or of any other State department, board or agency or of any political subdivision of the State, the purposes of the Commission will not be furthered by examining into '' the personal affairs of private citizens having only the remotest connection with harness racing within the State of New York.''

These objections, seemingly valid on their face, lose all force upon examination of the record as established by the background material furnished both by petitioners and respondents. By virtue of the petitioners' position as harness racing officials, past and present, their control of concessions and other privileges at harness race tracks, their extensive shareholdings, much of which, it would appear, they hold for others, and the large payments made to them in various capacities and deposited by them into personal, trustee or attorney accounts, their financial books and records are indispensable if the Commission is to succeed in uncovering information concerning harness racing in this State, upon which to develop effective legislative or other solutions of the problems, adverted to in the Executive Order, which led to the investigation now in progress. True, there is no power in the Commission to investigate harness racing outside the State; nevertheless, petitioners are enjoying privileges granted under licenses issued by this State, and their personal connection with harness racing and tracks outside is a legitimate subject of inquiry under the broad powers granted to the Governor by the Moreland Act to deal with matters affecting the public interest.

Of course, some of the records which are required to be produced by the subpœnas may not relate to the subject of inquiry and would, therefore, be of no concern of the Commission. However, who at this stage is to determine which pertain to harness racing and which purely to the private affairs of petitioners? The question suggests the answer. Were the Commission to be prohibited from examining in the first instance the records required by items 2 to 4 of the subpœnas, to determine for itself which are pertinent to the subject of inquiry, the investigation might well be stymied upon its threshold. As was eloquently observed by Chief Judge CARDOZO in *Matter of Edge Ho Holding Corp.* (256 N. Y. 374, 381–382) : " [the powers devolved upon the Commission] will be rendered to a large extent abortive if * * * [its] subpoenas are to be quashed in advance of any hearing at the instance of unwilling witnesses upon forecasts of the testimony and nicely balanced arguments as to its probable importance. *Very often the bearing of information is not susceptible of intelligent estimate until it is placed in its setting, a tile in the mosaic. Investigation will be paralyzed if arguments as to materiality or relevance, however appropriate at the hearing, are to be transferred upon a doubtful showing to the stage of a preliminary contest as to the obliga-*

*tion of the writ.* Prophecy in such circumstances will step into the place that description and analysis may occupy more safely. Only where the futility of the process to uncover anything legitimate is inevitable or obvious must there be a halt upon the threshold.'' (Emphasis supplied.)

The burden of demonstrating that the Commission's subpœnas duces tecum call '' for documents which are entirely irrelevant to any proper inquiry '' devolves upon the petitioners. (*Matter of Dairymen's League Co-op. Assn.* v. *Murtagh,* 274 App. Div. 591, 595, affd. 299 N. Y. 634.) It cannot be said that upon the record here they have met that burden. (*Matter of Joint Legislative Committee* [*Teachers Union*], 285 N. Y. 1, 9.)

As for the objections which are predicated upon alleged violations of the New York and Federal constitutions, this court is of the opinion that they are not well taken. Here, the investigation is for a lawful purpose and the petitioners have failed to establish any '' futility of the process to uncover anything legitimate '' and to show that the records sought had no apparent relevance to the subject matter of the inquiry. (*United States* v. *Morton Salt Co.,* 338 U. S. 632, 652–653.)

Argument, that to the extent that the subpœnas here challenged are on their face too indefinite, they violate petitioners' constitutional rights against unreasonable searches and seizures (*Shotkin* v. *Nelson,* 146 F. 2d 402), might be valid if the subpœnas were unlimited as to the dates from which the books and records therein sought are to be produced. However, they are so limited and cover the period of time *from* which each petitioner became *actively connected* with licensed harness racing in the State of New York. Under these circumstances it cannot be said that they transgress reasonable bounds. '' The gist of the protection is in the requirement, expressed in terms, that the disclosure sought shall not be unreasonable.'' (*Oklahoma Press Pub. Co.* v. *Walling,* 327 U. S. 186, 208.) (Emphasis supplied.)

The additional objection of petitioner De Meo that the subpœna served upon him constitutes a gross violation of the attorney-client relationship (Civ. Prac. Act, § 353) must likewise fall for lack of merit. According to his affidavit, a '' large portion of the papers, documents and records in * * * [his] possession at this time consists of the private and personal records of a great number of people for whom * * * [he] acted as attorney.'' In his petition he asserts in conclusory fashion that the subpœna '' violates the confidential relationship

between attorney and client." Nowhere does he " name an actual client in order to prove the existence of the relationship " (*People ex rel. Vogelstein* v. *Warden of Co. Jail of Co. of N. Y.,* 150 Misc. 714, 718, affd. 242 App. Div. 611); nor does the subpœna require him to produce documents other than those which belong to him. To uphold the alleged attorney-client privilege under such circumstances would mean that " no lawyer could ever be questioned as to any fact, since he might always claim that he had learned it from a client whose very existence he need not show." (*People ex rel. Vogelstein* v. *Warden of Co. Jail of Co. of N. Y., supra,* p. 718.)

It follows that each application must in all respects be denied and the petitions dismissed. Settle orders on two days' notice.