OPINION OF THE COURT
Stanley L. Sklar, J.,
This proceeding raises questions as to the power of the New York State Commission on Governmental Integrity and the Attorney-General to issue subpoenas to Republican Committees for the production of information about contributions to, and expenditures by, "housekeeping” funds which are currently exempt from disclosure under the Election Law. The subpoenas are also sought to be quashed as giving partisan advantage to the Democratic Party and as violating the First Amendment rights of the committees and the contributors.
Petitioners are the New York State Republican State Committee and the Suffolk, Westchester and Erie County Republican Committees. The Commission has cross-moved to compel compliance with the subpoenas.
Scandals in government have suggested the need for scrutiny of the role of political parties so as to promote probity in government and promote public confidence in our government officials and institutions.
The Commission was established by Governor Cuomo pursuant to Executive Order No. 88.1, dated April 21, 1987, to "investigate instances of corruption in the administration of government and to determine the adequacy of laws, regulations and procedures relating to government integrity.”
The Commission was instructed to: "investigate the management and affairs of any department, board, bureau, commission (including any public benefit corporation) or political subdivision of the State in respect to the adequacy of laws, regulations and procedures relating to maintaining ethical practices and standards in government, assuring that public servants are duly accountable for the faithful discharge of the public trust reposed in them and preventing favoritism, conflicts of interest, undue influence and abuse of official position, and to make recommendations for such action to strengthen and improve such laws, regulations and procedures.” (Executive Order No. 88.1, § I.)
Section II (3) of the Executive Order directed the Commission to "[investigate weaknesses in existing enforcement machinery for laws, regulations and procedures relating to unethical practices, and determine whether such weaknesses *792 create undue potential for corruption, favoritism, undue influence or abuse of official position or otherwise impair public confidence in the integrity of government.”
Section II (5) of the Executive Order directed the Commission to "Investigate weaknesses in existing laws, regulations and procedures relating to campaign contributions and campaign expenditures, and determine whether such weaknesses create an undue potential for corruption, favoritism, undue influence or abuse of official position or otherwise impair public confidence in the integrity of government.”
The executive order enabled the Commission to carry out its mandates by granting it full investigatory and subpoena powers pursuant to Executive Law §§ 6 and 63 (8). In addition, the Attorney-General was directed to exercise his investigatory powers to pursue the goals of the Commission as authorized in section 63 (8) of the Executive Law.
The subpoenas under attack were issued by the Commission and the Attorney-General in late September 1987. The subpoenas were directed to the committees and called for the production of "All documents and computer records evidencing, reflecting or relating to monies and other things of value received and expenditures made in the period from January 1, 1984 to the date of your compliance with this subpoena which are claimed, pursuant to Section 14-124 (3) of the Election Law, to be exempt from the filing requirements and the expenditure, contribution and receipt limits of Article 14 of the Election Law.”
State and county political party committees are formed pursuant to article 2 of the Election Law, and are substantially regulated by the Election Law as to their composition and activities. All party committees are required to disclose and file detailed statements of the receipt of contributions to promote the candidacy of specific candidates. (Election Law art 14.) Section 14-124 (3) exempts from the filing requirements, and from the expenditure, contribution and receipt limits of article 14, any "monies received and expenditures made by a party committee or constituted committee to maintain a permanent headquarters and staff and carry on ordinary activities which are not for the express purpose of promoting the candidacy of specific candidates.”
These funds, commonly called "housekeeping” accounts, are the subject matter of the subpoenas in question. Similar subpoenas were also served upon the New York State Demo *793 cratic Committee, the Bronx, Queens, Kings and Erie County Democratic Committees and the Nassau County Republican Committee. None of these organizations has objected to the subpoenas.
The Commission is concerned that the "housekeeping” accounts are, or might be, used to circumvent campaign contribution disclosure laws. Large, anonymous contributors to a party’s "housekeeping” fund would not be subject to limitation or disclosure, and could either be used illicitly for actual campaign purposes, or be used to "free up” funds for campaign use without adequate disclosure. These large contributors, it is feared, although anonymous, still have the influence, or access to influence, that at worst promotes corruption in government, and, at least, erodes public confidence in the integrity of government. The Commission has voiced its concern that the practice of anonymous contributions might already be widespread, effectively constituting loopholes in current disclosure laws. The Commission states that the subpoenas are for information-gathering purposes. It wishes to inform the Governor and the Legislature with factual information so that an informed, rather than a speculative, decision may be made as to the effectiveness of current legislation on the accountability of the political party committees, and their contributors, and whether those laws should be revised and expanded.
The committees argue that the Commission has overstepped its legal authority under the executive order and the Executive Law by issuing subpoenas to entities which are not either a "department, board, bureau or commission of the state”, and that the Commission’s investigatory power, and hence its subpoena power, is limited to State entities as described in Executive Law § 6.
Executive Law § 6 states in part that: "The governor is authorized at any time, either in person or by one or more persons appointed by him for the purpose, to examine and investigate the management and affairs of any department, board, bureau or commission of the state. The governor and the persons so appointed by him are empowered to subpoena and enforce the attendance of witnesses, to administer oaths and examine witnesses under oath and to require the production of any books or papers deemed relevant or material.” Commissions created pursuant to this section are commonly known as "Moreland Commissions”.
*794 The committees also argue that the Commission has failed to establish a sufficient basis for the requested inquiry in that the Commission has failed to demonstrate any actual complaint of wrongdoing on the part of the committees, which have violated no laws in failing to disclose their "housekeeping” finances. The committees, therefore, claim that the subpoenas violate their First Amendment rights, will have a chilling effect on further contributions to the parties, and thus will have a political effect. Lastly, the committees find the subpoenas overbroad and burdensome in scope, issued for the purpose of harassing the Republican Party, and to gain information which could be used for partisan political advantage against the Republican Party.
Section II of the Executive Order specifically authorized the Commission to investigate potential weaknesses in the State’s existing laws relating to campaign contributions and expenditures, and granted the Commission full investigatory powers to do so. The Commission’s authority to issue subpoenas to this end is beyond question. (Executive Law §§ 6, 63 [8].)
In the process of investigating the adequacy or efficiency of a State entity, it is common to subpoena testimony or documents from non-State entities or individuals whose activities are regulated or directly relate to the laws or State entities under scrutiny.
For example, in Matter of Weil v New York State Commn. to Investigate State Agencies in Relation to Pari-Mutuel Harness Racing (205 Misc 614), where a Commission was mandated by executive order to " 'study, examine and investigate the management and affairs of the State Harness Racing Commission’ ” with regard to the "adequacy of present laws, practices and procedures for the supervision of * * * harness racing, and to make recommendations in connection therewith”, the Commission was found to possess an unquestionable right to issue subpoenas (supra, at 616-617). This included the right to issue subpoenas on any party possessing information relevant to its inquiry even if the individuals were unconnected with the State or the agency under investigation. (Supra, at 619.)
Likewise, in Schiffman v Bleakley (46 NYS2d 353), a Commission established to investigate the administration of the Workmen’s Compensation Laws was empowered to subpoena the testimony of a private physician in furtherance of its investigation.
*795 While it is apparent that the Commission on Government Integrity, as a "Moreland” Commission, has adequate authority to issue the subpoenas in question, this authority is augmented by the broad investigatory rights possessed by the Attorney-General and his deputies to subpoena witnesses and documents under Executive Law § 63 (8), which states "Whenever in his judgment the public interest requires it, the attorney-general may, with the approval of the governor, and when directed by the governor, shall, inquire into matters concerning the public peace, public safety and public justice.”
Thus, the Attorney-General or his duly appointed deputies may issue subpoenas upon nursing home facilities. (Matter of Sigety v Hynes, 38 NY2d 260 [private proprietary homes for adults]; Matter of Friedman v Hi-Li Manor Home for Adults, 42 NY2d 408 [an individual witness’ testimony in relation to organized crime]; Matter of Di Brizzi [Proskauer], 303 NY 206 [pursuant to Executive Law § 62 (8), later renum § 63 (8)].)
In the present proceeding the focus of the Commission’s investigation is not, as petitioners’ claim, petitioners themselves, but the relationship of petitioners to the State Board of Elections management of the current campaign disclosures laws, and the efficacy of those laws to promote confidence in government. No one has seriously suggested that petitioners are State entities.* As the court noted in Schiffman v Bleakley (supra), petitioners’ insistence that they are the focus of the investigation is a misunderstanding as to the purposes of the Commission. In the current matter, the Commission’s dealing with the petitioners are "not personal but only incidental, to its fact finding.” (Supra, at 354.)
Therefore, it is apparent that the Commission was fully authorized to subpoena petitioners in aid of its investigation into State concerns.
With this understanding of the Commission’s authority, it is also apparent that the Commission has established a proper basis for the subpoenas of petitioners’ financial records.
It has long been established that an agency of government may not conduct an "unlimited and general inquisition” into the affairs of individuals within the jurisdiction without first establishing "authority, relevancy, and some basis for inquisitorial action.” (Matter of A’Hearn v Committee on Unlawful *796 Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916, 918, supra.) Nonjudicial subpoenas must bear only a "reasonable relation to the subject-matter under investigation and to the public purpose to be achieved”. (Matter of Windsor Park Nursing Home v Hynes, 42 NY2d 243, 246.)
The Commission has established its authority, and the relevance of the committees’ until now undisclosed financial records to a complete evaluation of the present campaign disclosure laws. Further, the Commission has shown that the information bears a reasonable relation to the subject matter of the investigation and the important public purpose of instilling public confidence in the integrity of our elected officials.
The Commission is not required to establish " 'probable cause’ ” to back up its nonjudicial subpoenas. (Myerson v Lentini Bros. Moving & Stor. Co., 33 NY2d 250, 256.) Nor need it make any minimum threshold showing that an authentic and verifiable complaint has been made to justify the subpoena.
This is not a case in which the investigatory entity is required by its very nature to respond to complaints of wrongdoing or illegality, as in Matter of Levin v Murawski (59 NY2d 35 [investigation of complaint by State Board for Professional Medical Conduct]) or Myerson v Lentini Bros. Moving & Stor. Co. (supra [investigation of numerous unspecified complaints by Consumer Affairs Commission]).
The Commission on Government Integrity is not authorized to investigate specific complaints of wrongdoing, and is, on the contrary, required to pass along any evidence of illegality to the proper law enforcement authority. (Executive Order No. 88.1, § VII.) Rather, the Commission is a fact-finding body authorized to subpoena and collect any information reasonably related to its expressed goal. No specific complaint of wrongdoing is required to trigger the Commission’s reasonable investigation of the State-regulated political committees, and none has been made. Although the Commission has described possible misconduct which may be uncovered by its investigation, it is equally possible that none will be found. In either case, the Commission’s subpoenas will have fulfilled their function in clarifying the campaign contribution issue as it relates to the current laws on the subject and to possible amendment of those laws. The Commission notes that it has recommended legislation, that proposed legislation has been *797 introduced, and the Commission wishes factual data, to support or negate, the desirability of enacting its recommendations or other possible legislation.
There is no merit to the petitioners’ claim that the subpoenas were issued in bad faith as a means to harass the Republican Party. Identical subpoenas were issued to five Democratic Party committees (as well as one Republican committee which offered no objection). It is equally untenable to assume that the Commission intends to use the information it receives to the detriment of the Republican Party. There is simply no factual basis in this record for such a suggestion.
Neither are the subpoenas overly broad nor unduly burdensome in light of the potential relevance of the material to a valid investigation. The subpoenas are limited to a four-year period, and require documentation of the committees’ expenses in a comprehensible and complete manner. The committees cannot complain that the scale of their own operations makes disclosure burdensome when it is that very scale which is the concern of the investigating agency.
The committees present their objections to the scope of the subpoenas in a conclusory fashion, failing to specify in what manner the subpoenas are overbroad, other than to complain that a large number of documents is involved. The court notes that the Commission offered to discuss possible modifications of the subpoenas with the committees which chose instead to institute the present proceeding. Because the committees’ attack on the burdensome nature of the subpoenas is so conclusory, there is no valid basis for this court to narrow the scope of the subpoenas.
In a broad investigation such as the present one, it has been recognized that an "[investigation will be paralyzed if arguments as to materiality or relevance, however appropriate at the hearing, are to be transferred upon a doubtful showing to the stage of a preliminary contest as to the obligation of the writ.” (Matter of Edge Ho Holding Corp., 256 NY 374, 381-382.) "Only where the futility of the process to uncover anything legitimate is inevitable or obvious must there be a halt upon the threshold.” (Supra, at 382.)
Lastly, this court finds no substance to petitioners’ First Amendment argument. Petitioners are required to support their argument that disclosure of their "housekeeping” accounts will have a chilling effect on the free association and right to privacy of the committees and their contributors by *798 some concrete demonstration at least of a " 'reasonable probability’ * * * of injury occasioned by disclosure”. (Matter of Nicholson v State Commn. on Judicial Conduct, 50 NY2d 597, 609.) It is insufficient merely to assert the potential for a "chilling effect” (supra, at 609), especially in light of the Commission’s showing of a legitimate State interest in the inquiry. The court fails to see how limited disclosure of the petitioners’ "housekeeping” finances will have a chilling effect on any person’s First Amendment rights, in light of the disclosure requirements already in effect pursuant to Election Law article 14, unless, of course, contributions are indeed being made illicitly through the medium of contributions to the committees’ "housekeeping” expenses. Petitioners have failed to establish any real probability of harm to their First Amendment rights.
Accordingly, petitioners’ motion is denied. Cross motion is granted. Petitioners shall comply with the subpoenas on March 16, 1988.

 On the other hand, it is manifest that political parties are vital in our process of election of many officials of all three branches of government.