*750 OPINION OF THE COURT
Bernard J. Malone, Jr., J.
This is an application by the New York State Temporary Commission on Lobbying to enforce subpoenas issued by the Commission to the defendants. On consent, the parties have resolved all of the issues that were before the court except the question of whether defendant Dr. Benjamin Chavis is required to turn over to the Commission his personal expense accounts from January 1, 2003[1] to the present. That demand is item five in the two subpoenas addressed to Dr. Chavis. The application of the Commission for an order pursuant to CPLR 2308 compelling Dr. Chavis to turn over to the Commission his personal expense accounts from January 1, 2003 to the present is denied and those provisions of the two subpoenas are quashed.
The Lobbying Act was enacted to gather and disclose information concerning who is attempting to influence the passage of any statute, rule, local law, or ordinance by the Legislature, the Governor, a state agency or a municipality (Legislative Law § 1-c [c]). The legislation creates the Commission which is composed of six members[2] and creates the position of Executive Director as the chief administrative officer (Legislative Law § 1-d [a], [b]). Among its other powers, the Commission has the authority to conduct investigations, administer oaths and issue subpoenas for persons and documents (Legislative Law § 1-d [b]). Also, the Commission can conduct random audits, hold public or private hearings, prepare forms for reports and lobbying statements, issue advisory opinions and must submit an annual report to the Governor and the Legislature (Legislative Law § 1-d [c] [3], [4], [5], [6]). The heart of the Legislative Law is the requirement that lobbyists register annually and file reports of their activities and finances (Legislative Law § 1-e).
The Commission contends that in the spring of 2003 it obtained information that an alliance consisting of Russell Simmons, Dr. Benjamin Chavis, Hip-Hop Summit Action Network, and Hip-Hop Research & Education Fund may have been en *751 gaging in lobbying activities by organizing a rally to oppose the Governor Rockefeller Drug Laws. On July 15, 2003, a lobbyist registration form was filed on behalf of the Coalition for Fairness listing $300,000 in expenses with respect to the campaign against the Rockefeller Drug Laws. Agents of the Commission contacted some of the vendors listed in the registration form and discovered that they had not been paid by the Coalition. The Commission began an investigation of the Coalition, Andrew Cuomo,[3] Russell Simmons and Dr. Chavis. The two subpoenas before the court were issued by the Commission in the course of that investigation. As stated above, the only issue remaining before this court is whether the personal expense accounts of Dr. Chavis for the period of January 1, 2003 to the present need be disclosed to the Commission as demanded in those subpoenas.
It appears to be the position of the Commission that Dr. Chavis might have personally paid for some of the lobbying expenses of the alliance. Otherwise, in this court’s reasoning, the personal expenses of Dr. Chavis would not be relevant to the Commission’s investigation.
According to his recent testimony given in response to one of the subpoenas, Dr. Chavis is the chief executive officer of both the Fund and the Network. He was approached by Russell Simmons on or about May 8, 2003 and asked to help organize a rally that several individuals and organizations were putting together for June 4, 2003 to protest the Governor Rockefeller Drug Laws. On May 8, 2003, an informal meeting was held at a New York City hotel attended by supporters of the rally. It was determined to form the Coalition in order to coordinate the activities of the different groups and individuals supporting the rally. Mr. Simmons asked Dr. Chavis to assume the nonsalaried titular position of volunteer coordinator of that Coalition. Dr. Chavis testified that the Coalition came into existence on May 8, 2003 and ceased operations on June 4, 2003 after the rally was over.
The alliance was an informal organization without an office or bank account. When donations came in for the event, such as a $50,000 contribution from Thomas Golisano, and when expenses were paid out they passed through the accounts of various supporters of the alliance. Dr. Chavis testified that at times the Fund and the Network acted as fiscal agents for the alliance. *752 The Commission has placed in the record some evidence that entities other than the alliance were billed for various expenses of the rally, including advertising expenses, but has not set forth any evidence that Dr. Chavis was either personally billed for such expenses or that he paid such expenses.
The defendants raise the following three legal arguments in opposition to the application by the Commission: the subpoenas were issued by Mr. Miccio, the counsel of the Commission, at the direction of Mr. Grandeau, the Executive Director of the Commission, and defendants state that neither person has the authority to issue subpoenas because the Legislature has delegated that power only to the Commission itself; only the Attorney General can commence litigation to enforce a subpoena issued by a state agency (Executive Law § 63), and since this action was commenced by Mr. Miccio as the attorney of record for the Commission it must be dismissed; and the subpoenas directed at the personal financial records of Dr. Chavis do not bear a reasonable relationship to the alleged misconduct being investigated by the Commission.
The first argument is resolved by the Third Department decision in the case of Matter of Shattenkirk v Finnerty (97 AD2d 51 [1983]). In that case, the Legislature delegated to the Budget Director of the State of New York the authority to withhold salary increases to state employees when, in his opinion they were not warranted or appropriate. During 1983, Budget Bulletin D-1052 was issued stating that “the Governor has determined” that salary increases authorized by the Legislature were not appropriate or warranted. Some of the affected state employees commenced litigation challenging the Budget Bulletin upon, among other grounds, that only the Budget Director, and not the Governor, had been delegated by the Legislature the authority to withhold pay raises. The lower court, Mr. Justice Harold J. Hughes, construed the statutory language as written and determined that only the Budget Director could exercise the delegated authority, not the Governor. The Third Department reversed, stating (at 58) as follows:
“Section 180 of the Executive Law states that, Tt shall be the duty of the director of the budget to assist the governor in his duties under the constitution and laws of the state respecting the formulation of the budget’. It follows, therefore, that the budget bulletin was merely a reflection of the relationship with the Governor and that respondent *753 Budget Director had not abdicated any responsibility that the Legislature had delegated to him. If he had disagreed with the Governor, the legislative delegation would have permitted the Budget Director to withhold the budget bulletin. Finally, on this point, it has been held that in budgetary matters the Budget Director acts as agent for the Governor (Matter of County of Oneida v Berle, 49 NY2d 515, 519, supra).”
The provisions of the Lobbying Act clearly provide that it is the duty of the Executive Director to assist the Commission in performing its duties and that he acts as their agent in performing his official tasks. Clearly, if the Commission disagreed with Mr. Grandeau about the issuance of the subpoenas, it could simply have directed him to withdraw the subpoenas. Applying the reasoning of Shattenkirk to this aspect of the controversy leads this court to reject the defendants’ delegation argument.
With respect to the second argument of the defendants, this court approved the substitution of the Attorney General as the attorney for the Commission in place of Mr. Miccio very early in the litigation. In this court’s view, the proper named party in litigation involving the validity of a subpoena issued by a state agency is the agency itself (see, Matter of Goverl Consulting Corp. v New York Temporary State Commn. on Lobbying, 113 AD2d 611 [1986], revd on dissenting op 68 NY2d 839 [1986]), and that appears to be the rule even when the subpoenas are issued by the Attorney General at the request of the state agency (see, Matter of New York Republican State Comm. v New York State Commn. on Govt. Integrity, 138 Misc 2d 790 [1988], affd 140 AD2d 1014 [1988]). Absent circumstances not present here, section 63 of the Executive Law requires that an action to enforce a subpoena issued by a state agency must be pursued with the Attorney General as the attorney of record for the state agency. The issue therefore becomes what happens when the Attorney General is not the counsel for the state agency at the time the litigation is commenced but is later substituted as the attorney of record. This court finds the answer in the case of Commissioner of Transp. v V.A.S.T. Resources (145 Misc 2d 1037 [1989]).
In V.A.S.T., a state agency commenced an eviction proceeding while being represented by private attorneys, with the approval of the Attorney General, although that approval was not authorized by Executive Law § 63. In response to a motion by the *754 state agency, the respondents cross-moved to disqualify the private attorneys for the state agency. The justice determining the cross motion decided that the Attorney General had to represent the state agency in the proceeding. However, he did not dismiss the proceeding due to this defect. Instead, he disqualified the private attorneys and suggested that the litigation could go forward if the Attorney General was substituted for the private attorneys. Here, the substitution has already taken place and following the rationale of VAS.T. this court is allowing this litigation to proceed.
The court finds merit in the defendants’ third argument. In the case of Matter of Goverl Consulting Corp. v New York Temporary State Commn. on Lobbying (113 AD2d 611 [1986], revd on dissenting op 68 NY2d 839 [1986]), Mr. Justice Ma-honey in his dissenting opinion (at 614), set forth the law applicable to the issuance of a subpoena by the Commission as follows:
“The Court of Appeals has noted that ‘[i]t is ancient law that no agency of government may conduct an unlimited and general inquisition into the affairs of persons within its jurisdiction solely on the prospect of possible violations of law being discovered, especially with respect to subpoenas duces tecum’ (Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916, 918, cert denied 395 US 959). Accordingly, the agency must demonstrate authority, relevancy and some basis for inquisitorial action (supra; see, Matter of Levin v Murawski, 59 NY2d 35, 41). Recently, the Court of Appeals held that the State Commission on Judicial Conduct, to support a subpoena, must demonstrate that the information sought is reasonably related to a proper subject of inquiry (Matter of New York State Commn. on Judicial Conduct v Doe, 61 NY2d 56).”
In this litigation, the Commission clearly has the legal authority to issue subpoenas. However, it has failed to satisfy this court upon the issues of a basis for the inquisition into the private financial records of Dr. Chavis and the relevance of those records. Dr. Chavis did not testify that he either personally received any funds donated to the Coalition or paid any of its expenses and the Commission has not set forth any facts to the contrary. The Coalition was a one-time umbrella group formed for the purpose of holding a rally and it was in existence *755 for only several weeks. The Commission has not submitted any evidence that the vendors used by the Coalition either billed Dr. Chavis for their services or received payment from him. It has placed before the court conjecture and surmise, which are not sufficient legal reasons to issue a subpoena which clearly invades the privacy of Dr. Chavis. Accordingly, with respect to the private financial records of Dr. Chavis, it appears to this court that the Commission is engaged in a query not authorized by law.

. The two involved subpoenas state “expense reports for Dr. Benjamin Chavis from January 1, 2002 to present.” However the Attorney General, the Executive Director of the Commission and defense counsel reached an agreement that the January 1, 2002 date should be changed to January 1, 2003.

. The Commission is created as follows: the Speaker of the Assembly nominates one member; the Minority Leader of the Assembly nominates one member; the Temporary President of the Senate nominates one member; the Minority Leader of the Senate nominates one member; and the Governor picks two members.

. He is purportedly a supporter of some of the goals of the Coalition.