OPINION OF THE COURT
Herbert Kramer, J.
*961 Petitioner New York State Supreme Court Officers Association (SCOA) moves for an order “issuing and ‘So Ordering’ a Subpoena Duces Tecum.”
Petitioner initiated an administrative proceeding with the New York State Public Employment Relations Board (PERB) by filing improper labor practice charges against respondent the New York State Unified Court System (UCS) and seeks the subpoena duces tecum for overtime records in connection with the hearing regarding those charges. Petitioner has charged that UCS engaged in an improper employment practice in implementing its Mobile Security Patrol Program (MSPP) by delegating all work for that program to a rival union, the New York State Court Officers Association (COA). Movant also charges that UCS engaged in a further improper practice by demanding that movant waive a provision in its collective bargaining agreement otherwise allowing overtime compensation between 6:00 p.m. and 7:30 a.m. Such waiver allegedly would have made SCOA more economically viable to participate in the MSPP UCS chose COA for the MSPP assignment after COA agreed to waive its own collective bargaining agreement provision and movant now seeks overtime records and time sheets of the 36 court officers assigned by COA to the MSPP
However, UCS argues that the PERB proceeding addresses the circumstances surrounding COA’s initial decision to participate in the MSPP and the validity of its waiver, not the participation of the parties after COA made its waiver. Hence, UCS views producing the overtime records and time sheets of every court officer and supervising officer in the MSPP as irrelevant to the PERB proceeding. UCS and COA, in fact, have earlier asserted this irrelevancy argument when movant applied for a subpoena duces tecum to the administrative law judge (ALJ) overseeing the improper practice charge. In opposing said application before the ALJ, they respectively characterized the requested information as having “no probative value in the matter at hand” and “not relevant to the proceedings or probative of any issue concerning bargaining unit work.”
The ALJ subsequently denied movant’s application, without explanation, in an administrative order dated May 6, 2003 and movant then excepted by taking an interlocutory appeal to PERB itself. The ensuing Board decision and order, dated August 18, 2003, denied movant’s interlocutory appeal but concluded that “because our statutory grant of subpoena power provides that subpoenas issued by PERB will be ‘regulated and *962 enforced under the [CPLR]’ and our own Rules specifically preserve the right of any person or entity to issue a subpoena pursuant to law, attorneys have the authority to issue subpoenas in PERB proceedings” (footnote references omitted).
Consequently, movant has brought this application pursuant to CPLR 2302 (a) and 2307 to independently compel production of the same MSPP records covered by the subpoena that the ALJ refused to issue. In addition, movant has sought the disputed records by making a Freedom of Information Law (FOIL) request which the Office of Court Administration (OCA) has processed at a cost of $1,230.25 under Public Officers Law § 87 (1) (b) (iii) and 22 NYCRR 124.8 which allow imposing a 250 charge per page* This expense remains unpaid, the reproduced records remain in the possession of OCA and thus the court must initially determine whether subject matter jurisdiction exists to issue the requested subpoena duces tecum. Stated differently, the court must ascertain whether attorneys have the authority to seek court-issued subpoenas in PERB proceedings.
Both sides recognize that “CPLR 2307 (subd. [a]) is applicable only to those subpoenas issued pursuant to CPLR 2302 (subd. [a]) with respect to administrative boards not granted specific power to issue subpoenas. Where . . . the administrative board’s authority to issue subpoenas is derived from a specific statutory grant of power . . . CPLR 2307 does not govern” (Matter of Irwin v Board of Regents, 27 NY2d 292, 296 [1970]). The Court of Appeals in Irwin further stated that “CPLR 2302 (subd. [a]), with respect to administrative boards, governs the issuance of subpoenas by those boards not already granted this power by statute, and as to those administrative boards to whom a specific grant of subpoena power had been granted, their power to issue subpoenas is derived solely from such grants” (id. at 297).
Here, the Legislature specifically granted PERB the power to issue subpoenas in its various hearings and concurrently invoked the general powers of the CPLR by stating in Civil Service Law § 205 (5) (k) that PERB’s powers included:
*963 “For the purpose of such hearings and inquiries, to administer oaths and affirmations, examine witnesses and documents, take testimony and receive evidence, compel the attendance of witnesses and the production of documents by the issuance of subpoenas, and delegate such powers to any member of the board or any person appointed by the board for the performance of its functions. Such subpoenas shall be regulated and enforced under the civil practice law and rules” (Emphasis added.)
Reviewing relevant case law, which has construed similarly worded statutes that grant specific subpoena power and which also provide that such subpoenas shall be “regulated” by the CPLR, shows that Supreme Court jurisdiction exists to entertain subpoena applications. For example, the Appellate Division, Third Department, explained in Matter of Derle Farms v Barber (79 AD2d 1050, 1051 [1981]) that
“when an administrative agency has been granted subpoena power by separate statutory authority, its powers in relation thereto are governed solely by the enactment and are not limited by any inconsistent features of the CPLR (cf. Matter of Irwin v Board of Regents of Univ. of State of N.Y., 27 NY2d 292 [1970]). However, since the statutory provisions of the Agriculture and Markets Law which refer to respondent’s subpoena power state that subpoenas ‘issued’ thereunder shall be ‘regulated’ by the CPLR (Agriculture and Markets Law § 34, subd 4; § 254, subd [b]), and since CPLR 2304 supplies a mechanism for testing the propriety of an issued subpoena by a motion to quash, it follows that both the need for the subpoena and the relevance of the evidence sought are matters for a court to decide upon motion, rather than by respondent or his agents” (cf. Matter of La Belle Creole Intl, v Attorney-General of State of N.Y., 10 NY2d 192 [1961]; Matter of Dairymen’s League Coop. Assn. v Murtagh, 274 App Div 591 [1948], affd 299 NY 634 [1949]).
The Appellate Division, Second Department, had earlier recognized a litigant’s right to seek judicial intervention to quash a subpoena when a specific statutory grant of subpoena power also invokes regulation under the CPLR. The Court in that case, Matter of Silverman v State Liq. Auth. (47 AD2d 226, 229 [1975]), noted that “[subdivision 10 of section 17 of the Alcoholic Beverage Control Law provides that subpoenas issued *964 under its provisions shall be regulated by the CPLR.” (Emphasis added.) Thus, Supreme Court jurisdiction existed to address a motion to quash a subpoena since “[t]he CPLR provides for a specific manner of testing the validity and propriety of a subpoena” (id.).
Likewise, the Appellate Division, Second Department, instructively concluded in Matter of Wellington Importers v State Liq. Auth. (67 AD2d 714 [1979]) that a party in an administrative proceeding involving a specific grant of subpoena power which itself invokes CPLR regulation could seek a subpoena duces tecum before a Supreme Court justice. Section 17 (6) of the Alcoholic Beverage Control Law, applicable in that case, like Civil Service Law § 205 (5) (k) herein, contains a specific grant of subpoena power and provides that those subpoenas shall be regulated by the CPLR. The Legislature has empowered the State Liquor Authority under Alcoholic Beverage Control Law § 17 (6), just as it has empowered PERB, “[t]o hold hearings, subpoena witnesses, compel their attendance, administer oaths, to examine any person under oath and in connection therewith to require the production of any books or papers relative to the inquiry [as regulated by the CPLR].” The referenced decision, relying on both Matter of Irwin v Board of Regents (27 NY2d 292) and Matter of Silverman v State Liq. Auth. (47 AD2d 226 [1975]), held that “petitioner should have sought the subpoena [duces tecum] from a Justice of the Supreme Court” (Matter of Wellington, 67 AD2d at 715).
The Appellate Division, Third Department’s decision in Matter of Chang Il Moon v New York State Dept, of Social Servs. (207 AD2d 103 [1995]), which UCS repeatedly cites in opposing SCOA’s application, actually comports with this analysis. In Moon, the appellate court stressed the need to examine the specific statutory grant of subpoena power. Here, unlike the statutes in the Moon case and the others cited by UCS, Civil Service Law § 205 (5) (k) contains the reference to regulation and enforcement under the CPLR. The judicial construction given that reference, as discussed above, shows that such a specific grant of subpoena power permits rather than divests attorneys and the Supreme Court of the power to issue or quash subpoenas in PERB proceedings. In addition, the recognition that the statute itself (Civil Service Law § 205 [5] [k]) authorizes issuance of subpoenas by attorneys and the Supreme Court thus moots consideration whether PERB’s rule, also allowing such issuance (4 NYCRR 211.1 [b]), constitutes an ultra vires act.
*965 UCS further argues the irrelevancy of the records to the underlying PERB matter and the burdensome nature of their production. However, a very high standard governs an irrelevancy determination given the principle that quashing a subpoena results “where the information sought is ‘utterly irrelevant to any proper inquiry’ ” (Anheuser-Busch, Inc. v Abrams, 71 NY2d 327, 332 [1988], quoting Matter of Dairymen’s League Coop. Assn, v Murtagh, 274 App Div 591, 595 [1948], affd 299 NY 634 [1949]). Separately, OCA’s acknowledged efforts which have already resulted in assembling the disputed information in connection with movant’s FOIL request now diffuses the burdensome production argument.
Nonetheless, SCOA fails to justifiably seek the requested records. The movant simply contends that it requires “access to records indicating if overtime has been incurred in connection with the MSPP” to refute UCS’s basis for its action. Such position merely represents a rationale for discovery and the Court of Appeals and the Appellate Division, Second Department, have held that “[a] subpoena duces tecum may not be used for purposes of discovery or to ascertain the existence of evidence (see Matter of Terry D., 81 NY2d 1042 [1993]; People v Gissendanner, 48 NY2d 543 [1979]; Fabbricatore v Lindenhurst Union Free School Dist., 259 AD2d 656 [1999]; Oak Beach Inn Corp. v Town of Babylon, 239 AD2d 568 [1997]; People ex rel. Martone v Warden of Queens House of Detention, 175 AD2d 821 [1991])” (Matter of Board of Educ. of City of N.Y. v Hankins, 294 AD2d 360, 360 [2002]). In addition, OCA’s assembling of the demanded records in response to SCOA’s FOIL request shows, as the Appellate Division, Second Department, commented this past September, that movant “failed to establish that the information was otherwise unobtainable (see Golden Mark Maintenance v Alarcon, 265 AD2d 377 [1999]; Matter of Validation Review Assoc., 237 AD2d 614 [1997])” (Degliuomini v Degliuomini, 308 AD2d 501, 501 [2003]).
Accordingly, it is ordered that petitioner’s motion is denied.

 OCA explains that redacting and reproducing the 2,030 pages of overtime records requested costs approximately $1,000 (i.e., 2,000 pages at the double-page fee of 500 necessitated by redacting those 2,000 pages) plus an additional cost of $230.25 for the redacting and reproducing of the 765 time sheet pages (609 pages at 250 per page for reproduction and 156 pages at the double-page fee of 500 necessitated by redacting those 156 pages).